IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Jesse James, Jr. (N-85041), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 20-cv-4409 |
| v. ) | |
| ) | Judge Martha M. Pacold |
| Andrea Tact, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jesse James, Jr., currently incarcerated at Pontiac Correctional Center, brought this *pro se* civil rights complaint, 42 U.S.C. § 1983, alleging an April 26, 2019, incident of excessive force and deliberate indifference to a serious medical condition at the Joliet Treatment Center. Defendants Dismukes, Freeman, and Wright have moved for summary judgment (Doc. 87), arguing that Plaintiff failed to exhaust administrative remedies prior to filing suit, as required under the PLRA. For the reasons that follow, the motion [87] is denied.

**BACKGROUND**

**I.     Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923-24 (7th Cir. 1994)). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a)(2). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary

material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).

Because Plaintiff is proceeding *pro se*, Defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Doc. 90.) Plaintiff responded to Defendants' motion for summary judgment but did not address or attempt to dispute any of their statements of fact. (Doc. 103.) The Court therefore accepts as true Defendants' Statement of Facts to the extent it is supported by the record. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).[1] Nonetheless, although the Court is entitled to demand strict compliance with Local Rule 56.1, *see Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) (unpublished), it will generously construe the record evidence, including Plaintiff's response and the many pages of supporting material Plaintiff included, to determine whether there is a disputed issue of material fact. *See Bentz v. Hardy*, 638 F. App'x 535, 536 (7th Cir. 2016) (unpublished). Failure to comply with Local Rule 56.1 does not automatically warrant judgment in favor of the moving party. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (moving party has "ultimate burden of persuasion" to show entitlement to judgment as a matter of law).

## II. Relevant Facts

Plaintiff Jesse James, Jr. is currently incarcerated within the Illinois Department of Corrections at Pontiac Correctional Center. (Def. SOF, Dkt. 89, at ¶ 1).

Defendant Brandon Dismukes and Defendant Amanda Freeman are correctional officers at Joliet Treatment Center. (*Id.* at ¶¶ 2-3, and *see* Plaintiff's Complaint, Dkt. 14, pp. 2-3). Defendant Kevin Wright is a correctional lieutenant at Joliet Treatment Center. (Def. SOF, Dkt. 89, at ¶ 4 and *see* Plaintiff's complaint, Dkt. 14, p. 2).

---

[1] As the Court reviewed the record in deciding the motion, it discovered what appeared to be a discrepancy between the Counseling Summary (Doc. 89, Ex. G) and Defendants' statement of undisputed material facts (Doc. 89, ¶ 39). The Court then ordered Defendants to produce grievances listed in the counseling summary, described as received by the counselor on May 22, 2019, and assigned by the receiving prison official the numbers 70.05.19 and 71.05.19. In response, Defendants submitted a grievance, dated May 20, 2019, (Doc. 111), which describes the incident underlying Plaintiff's complaint in this case.

Plaintiff's claims in this matter arise out of allegations of a physical altercation between Plaintiff and Defendants at Joliet Treatment Center in April 2019. (Def. SOF, Dkt. 89, at ¶ 7).

Grievances at Joliet Treatment Center are collected in accordance with the following procedures. (*Id.* at ¶ 8). Locked grievance boxes are located in every living unit at Joliet Treatment Center. (*Id.*) Inmates who wish to submit a grievance are required to personally place their grievance through a slit in the locked grievance box. (*Id.*) Staff members from the Grievance Office collect the grievances in the grievances boxes and take them to the Grievance Office for processing. (*Id.*)

At Joliet Treatment Center, it is an inmate's responsibility to personally place any grievances in the grievance box in order to ensure that the grievance is actually collected by the Grievance Office. (*Id.* at ¶ 9). All inmates at Joliet Treatment Center are instructed on the grievance procedure. (*Id.* at ¶ 10). A grievance should contain factual details regarding each aspect of the inmate's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. (*Id.* at ¶ 11).

Every grievance received by the Grievance Office is date-stamped and assigned a Grievance Number that is written onto the grievance. (*Id.* at ¶ 12). Every time the Grievance Office receives a grievance, the Grievance Office makes an entry (to memorialize that a grievance was received) in the cumulative counseling summary for the inmate who submitted the grievance, and then sends the inmate a copy of this entry as a receipt. (*Id.* at ¶ 13). Originals or copies of all grievances received by the Grievance Office are stored in the master files for the inmates who submitted the grievance. (*Id.* at ¶ 14). The Grievance Office sends the grievances that it receives from the grievance boxes to the appropriate individuals and entities, who respond to the grievance in accordance with the procedures set forth in the Illinois Administrative Code. (*Id.* at ¶ 15).

Under most circumstances, an inmate should first attempt to resolve grievances through his counselor. (*Id.* at ¶ 16). When the Grievance Office receives a grievance in the grievance box that has not previously been reviewed by the inmate's counselor, the Grievance Office takes the following steps: (1) date-stamps the grievance; (2) assigns the grievance a Grievance Number, and writes this Grievance Number onto the grievance; (3) makes an entry in the inmate's cumulative counseling summary that a grievance was received; (4) sends the inmate a copy of the entry in the cumulative counseling summary as a receipt that the Grievance Office received the grievance; and then (5) sends the grievance to the inmate's correctional counselor for his or her response. (*Id.* at ¶ 17).

When an inmate's correctional counselor receives a grievance from the Grievance Office, the counselor investigates the grievance, drafts a response to the grievance, and writes this response in the "Counselor's Response" section of the grievance form. (*Id.* at ¶ 18). The counselor then makes a copy of the grievance (which includes the "Counselor Response"), puts that copy in the inmate's master file, and gives the original grievance back to the inmate with the "Counselor's Response" filled in. (*Id.*) The record in this case indicates that the Counselor received Plaintiff's grievance regarding the underlying incident on May 22, 2019. (Doc. 89, Ex. G, p. 1).

If the grieved issue remains unresolved following informal efforts with an inmate's counselor, then the inmate may submit the grievance to the Grievance Office for formal review. (Doc. 89 at ¶ 19). Such grievances must be submitted within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. (*Id.*) If an inmate wishes to submit his grievance for formal review by the Grievance Office, the inmate must place his grievance—which now has the "Counselor's Response" section filled in—inside the locked grievance box, just as before. (*Id.* at ¶ 20). When the Grievance Office receives a grievance that already includes a response from the inmate's counselor—and, therefore, must be submitted to the Grievance Officer for formal review—the Grievance Office takes the following steps: (1) date-stamps the grievance a second time; (2) makes another entry in the inmate's cumulative counseling summary that a grievance was received; and (3) sends the inmate a copy of the entry in the cumulative counseling summary as a receipt that the Grievance Office received the grievance. (*Id.* at ¶ 21).

When an inmate submits his grievance for formal review by the Grievance Office, the facility Grievance Officer conducts his or her investigation of the grievance. (*Id.* at ¶ 22). The Grievance Officer may personally interview the inmate and / or other witnesses as deemed appropriate and obtain relevant documents to determine the merits of the inmate's grievance. (*Id.*) Upon completion of the Grievance Officer's investigation of a grievance, the Grievance Officer generates a Grievance Officer Report, which contains the Grievance Officer's conclusions and recommendations. (*Id.* at ¶ 23).

Once the Grievance Officer completes his or her investigation of a grievance, he or she sends the Grievance Officer Report to the office of the correctional facility's Chief Administrative Officer. (*Id.* at ¶ 24). The Chief Administrative Officer, or his or her designee, reviews the grievance and Grievance Officer Report and then indicates on the Grievance Officer Report whether he or she concurs with the recommendations of the Grievance Officer. (*Id.*) After the Chief Administrative Officer or designee fills out the section of the Grievance Officer Report indicating whether he or she concurs with the recommendations of the Grievance Officer, copies of the grievance and the Grievance Officer Report—which now includes the

Chief Administrative Officer's decision—are placed in the inmate's master file. (*Id.* at ¶ 25). The original grievance and original Grievance Officer Report are sent to the inmate who filed the grievance. (*Id.*)

If an inmate chooses to appeal the correctional facility's response to his grievance, he may appeal the grievance decision to the Administrative Review Board ("ARB"). (*Id.* at ¶ 26). An inmate must submit a written appeal of the grievance decision to the Administrative Review Board within 30 days after the date of the decision by the Chief Administrative Officer, or his or her designee. (*Id.* at ¶ 27). When appealing a grievance decision to the Administrative Review Board, an inmate is required to include copies of the written responses from the facility's Grievance Officer and Chief Administrative Officer. (*Id.* at ¶ 28). The Administrative Review Board keeps copies of all grievances and grievance related documents that it receives from Illinois Department of Corrections inmates. (*Id.* at ¶ 29). The Administrative Review Board date-stamps all grievances and grievance-related documents that it receives from Illinois Department of Corrections inmates on the date that the documents are received by the Administrative Review Board. (*Id.* at ¶ 30). The Administrative Review Board reviews the grievance and the facility's grievance decision, investigates the matter as necessary, and then submits a written report of its findings and recommendations to the Director of the Illinois Department of Corrections. (*Id.* at ¶ 31).

After receiving the findings and recommendations from the Administrative Review Board, the Director of the Illinois Department of Corrections, or his or her designee, makes a final determination on the grievance. (*Id.* at ¶ 32). After the Director of the Illinois Department of Corrections, or his or her designee, makes the final determination on the grievance, copies of the Administrative Review Board's report and the Director's determination are sent to the inmate who submitted the grievance to notify the inmate of the grievance decision. (*Id.* at ¶ 33). The Administrative Review Board keeps originals of the Administrative Review Board's report and the Director's determination in the Administrative Review Board's files. (*Id.* at ¶ 34). Once the Director has made a final determination with respect to the grievance, an inmate's administrative remedies are exhausted. (*Id.* at ¶ 35).

Plaintiff's master file does not contain any grievances filed between April 1, 2019, and June 30, 2019, regarding his allegations in this case. (*Id.* at ¶ 36.) Plaintiff's master file does not contain any grievances filed between April 1, 2019, and June 30, 2019, alleging any altercation between Plaintiff and Defendants. (*Id.* at ¶ 37.) Plaintiff's cumulative counseling summary from April 1, 2019, through June 30, 2019, however, contains an entry about grievances related to this litigation, dated May 22, 2019. (Doc. 89, Ex. G, and Doc. 111).

According to the grievance documents in Plaintiff's ARB File, on or around December 20, 2019, Plaintiff mailed the ARB a grievance dated May 20, 2019, regarding the facts alleged in Plaintiff's complaint. (Doc. 89 at ¶ 40.) Plaintiff only sent the ARB his May 20, 2019, grievance and a letter. (*Id.*) Plaintiff did not include any responses from his correctional facility. (*Id.*) The record reflects that Plaintiff also sent an additional grievance to the ARB, dated August 7, 2019, raising the issue that his grievance from May 20, 2019, had not received a response. (Doc. 103, pp. 75-77). The ARB denied the August 7, 2019, grievance as moot, because Plaintiff was transferred to Dixon Correctional Center. (*Id.* at p. 75).

The grievance dated May 20, 2019, that Plaintiff mailed to the Administrative Review Board is the only grievance in Plaintiff's file with the Administrative Review Board related to Plaintiff's claims against Defendants in this case. (Doc. 89, at ¶ 41). Plaintiff's grievance file with the Administrative Review Board does not contain any other grievances alleging an altercation between Plaintiff and Defendants. (*Id.*)

The grievance dated May 20, 2019, that Plaintiff mailed to the Administrative Review Board does not appear in Plaintiff's master file. (*Id.* at ¶ 42). The grievance dated May 20, 2019, that Plaintiff mailed to the Administrative Review Board does not contain a Grievance Number. (*Id.* at ¶ 43). Plaintiff's grievance, dated May 20, 2019, includes only one date stamp, indicating that it was received by the Administrative Review Board on December 20, 2019. (*Id.* at ¶ 44). The "Counselor's Response" section on Plaintiff's May 20, 2019, grievance is blank. (*Id.* at ¶ 45).

On December 20, 2019, the Administrative Review Board issued its response to Plaintiff's May 20, 2019, grievance. (*Id.* at ¶ 46.) The Administrative Review Board denied Plaintiff's May 20, 2019, grievance for failing to adhere to proper grievance procedure. (*Id.* at ¶ 47). The Administrative Review Board determined that Plaintiff's May 20, 2019, grievance was untimely because it was sent to the Administrative Review Board on or around December 20, 2021. (*Id.* at ¶ 48). Plaintiff's grievance appeal to the Administrative Review Board regarding his May 20, 2019, grievance failed to comply with grievance procedure because Plaintiff did not obtain or attach any of the necessary responses from his correctional center, including those from his counselor, his facility Grievance Officer, and the facility Chief Executive Officer. (*Id.* at ¶ 49).

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is not demonstrated by "the mere existence of *some* alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (emphasis in original), or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a fact is material if it might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992). A genuine issue of material facts exists when "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The nonmovant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door Cty. Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012) (quoting *Anderson*, 477 U.S. at 250). Thus, "summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992) (quoting *Celotex*, 477 U.S. at 322); *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019).

When deciding a motion for summary judgment, the Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court must construe all facts in the light most favorable to the nonmoving party and draw all legitimate inferences in favor of that party. *Id.*

## II. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires an inmate who brings a civil rights complaint to first exhaust administrative remedies within the correctional system. 42 U.S.C. § 1997e(a); *see, e.g.*, *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005); *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). This requirement is mandatory; "a court may not excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016). The "benefits of exhaustion" (through the administrative process, which typically involves the filing of a grievance) "include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by

7

leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). To fulfill the exhaustion requirement, an inmate must comply with the procedures and deadlines established by the correctional facility's policies. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016); *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011). This means that prisoners must "take advantage of all procedures that are actually available." *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 831 (7th Cir. 2020). Because failure to exhaust is an affirmative defense, the burden is on the defendant to demonstrate that the inmate failed to exhaust. *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020).

Here, the grievance procedures in effect at the relevant time required inmates to file their grievances with the counselor within 60 days of the discovery of the problem or incident giving rise to the grievance. Ill. Admin. Code tit. 20, § 504.810(a). Grievances that cannot be resolved through routine channels are then sent to a Grievance Officer. Ill. Admin. Code tit. 20, § 504.820(a). The Grievance Officer then reviews the grievance and provides a written response to the prisoner. Ill. Admin. Code tit. 20, § 504.830(a). The Grievance Officer also reports his or her findings and recommendations to the Chief Administrative Officer ("CAO") within two months after receipt of the grievance, when feasible under the circumstances. Ill. Admin. Code tit. 20, § 504.830(e). The CAO then reviews the findings and advises the prisoner of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he can appeal to the Illinois Department of Corrections Director through the ARB within 30 days. Ill. Admin. Code tit. 20, § 504.850(a). The prisoner must attach copies of the Grievance Officer's report and the CAO's decision. *Id.* The ARB shall submit to the Director a written report of its findings and recommendations. Ill. Admin. Code tit. 20, § 504.850(d). The Director then reviews those findings and recommendations and makes a final determination as to the grievance within six months, when reasonably feasible. Ill. Admin. Code tit. 20, § 504.850(e). The prisoner is then to be sent a copy of the decision. *Id.*

In this case, Plaintiff filed a grievance relating to the incident at issue (underlying his complaint in this case) that was received on May 22, 2019. There is no counselor's response on this grievance. While Defendants go to great lengths to lay out the grievance procedure and the steps Plaintiff must follow in completing the process, it is clear from the record that in this case the procedure did not work as established. Plaintiff submitted the May 20, 2019, grievance; Defendants state that there is no grievance in Plaintiff's master file and that there is no record of the grievance in the cumulative counseling summary. However, the record establishes that Plaintiff did submit the grievance and that it is logged into his cumulative counseling summary. The record also establishes that Plaintiff followed up, filing a grievance on August 7, 2019, raising the issue that his grievance from May 20,

8

2019, had not received a response. The ARB denied that grievance as moot due to a transfer.

While inmates are required under the PLRA to exhaust administrative remedies before filing suit, they must exhaust only such administrative remedies as are "available" to them. 42 U.S.C. § 1997e(a); *Ross v. Blake,* 578 U.S. 632, 642 (2016). Administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton,* 423 F.3d 674, 682 (7th Cir. 2005). "If administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust." *Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2006). The record in this case establishes, contrary to Defendants' proposed undisputed statement of fact (Doc. 89 at ¶ 39), that Plaintiff's May 20, 2019, grievance was received by Joliet Treatment Center staff on May 22, 2019. It further reflects that when Plaintiff had not received a response at the facility by August 7, 2019, he submitted a grievance about the failure to address the May 20, 2019, grievance. The ARB denied the August 7, 2019, grievance as moot. The record further reflects that when Plaintiff finally sent his May 20, 2019, grievance to the ARB on December 16, 2019, raising the issue that it had never been answered, the ARB denied it as untimely.

Plaintiff attempted to exhaust all administrative remedies that were available to him, but when the ARB denied his grievance relating to the incident underlying the complaint in this case *and* the grievance he filed about the Joliet Treatment Center's failure to address that grievance, the process became unavailable to him. The ARB found Plaintiff's May 20, 2019, grievance to be untimely on December 19, 2019, and Plaintiff filed this suit on July 28, 2020. Accordingly, Plaintiff exhausted his administrative remedies before filing suit, and Defendants' motion for summary judgment is denied.

## CONCLUSION

Defendants' motion for summary judgment (Doc. 87) is denied. The parties should file by October 20, 2022 a joint status report indicating how they seek to proceed.

Date: September 29, 2022          /s/Martha M. Pacold

9